**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

AEI LIFE, LLC,

               Plaintiff,

      -against-

LINCOLN BENEFIT LIFE COMPANY,

            Defendant.

**Civil Action No. 1:14-cv-06449-JBW-JO**

**ECF CASE**

**ORAL ARGUMENT REQUESTED**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**<u>SUMMARY JUDGMENT</u>**

ARENT FOX LLP
1675 Broadway
New York, New York 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990

*Attorneys for Plaintiff AEI Life, LLC*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................1

I.     FACTS ...................................................................................................................3

     A.    The Policy...................................................................................................3

     B.    AEI Becomes The Policy's Sole Owner And Beneficiary ...................................4

     C.    LBL Commences A Lawsuit To Have The Policy Declared Void ......................5

     D.    LBL Continues To Accept Premium Even After Filing The New Jersey Action To Void The Policy ...................................................................................5

     E.    LBL Continues To Issue Verifications Of Coverage For The Policy Even After Filing The New Jersey Action To Void The Policy...................................6

     F.    LBL Continues To Verify That The Policy Is Active And In Force Even After Filing The New Jersey Action To Void The Policy...................................6

     G.    Relevant Procedural History In This Action ...................................................7

II.    ARGUMENT ..........................................................................................................7

     A.    Standard of Review ...................................................................................7

     B.    The Choice of Law Provision in the Policy is Ineffective – New York's Incontestability Rule Applies ...................................................................................8

          1.    The Principles in Restatement § 6 Do Not Require the Application of New Jersey Law ...................................................................................12

          2.    New York Law Applies Under a Traditional Conflict of Laws Analysis ...................................................................................13

     C.    New York's Incontestability Rule Prohibits LBL from Challenging the Validity of the Policy on Insurable Interest Grounds...........................................15

     D.    The Doctrine of Waiver or Estoppel Prohibits LBL from Challenging the Validity of the Policy...................................................................................17

III.   CONCLUSION ...................................................................................22

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Gen. Life Ins. Co. v. Diana Spira 2005 Irrev. Life Ins. Trust*,
No. 08-cv-06843(NSR), 2014 WL 6694502 (S.D.N.Y. Nov. 5, 2014) ................................... 14

*Am. Gen. Life Ins. Co. v. Salamon*,
483 Fed. App'x 609 (2d Cir. 2012) ....................................................................................... 20, 21

*Am. Nat. Ins. Co. v. Conestoga Settlement Trust*,
442 S.W.3d 589 (Tex. App. 2014) ......................................................................................... 10

*Anglo American Ins. Grp., P.L.C. v. CalFed, Inc.*,
899 F.Supp. 1070 (S.D.N.Y. 1995) ........................................................................................ 11

*Barna v. McCarthy*,
No. A-2328-06T3, 2007 WL 3354292 (N.J. Super. Ct. App. Div. Nov. 14, 2007) .......... 19, 20

*Bible v. John Hancock Mut. Life Ins. Co.*,
256 N.Y. 458 (1931) ................................................................................................................ 20

*Conrow v. Little*,
115 N.Y. 387 (1889) ................................................................................................................ 18

*Continental Ins. Co. v. Helmsley Enterprises, Inc.*,
211 A.D.2d 589 (1st Dep't 1995) ........................................................................................... 20

*Fidelity and Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*,
540 F.3d 133 (2d Cir, 2008) .................................................................................................. 20

*Fleet Messenger Service, Inc. v. Life Ins. Co. of N. Am.*,
315 F.2d 593 (2d Cir. 1963) .................................................................................................. 14

*Garbin v. Mut. Life Ins. Co. of N.Y.*,
356 N.Y.S.2d 741 (1st Dep't App. Term 1974) ...................................................................... 20, 21

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
449 F.3d 377 (2d Cir.2006) .................................................................................................... 13

*Haywin Textile Prods., Inc. v. Int'l Fin. Inv. and Commerce Bank Ltd.*,
152 F.Supp. 2d 409 (S.D.N.Y.2001) ...................................................................................... 11

*Holmes v. Nationwide Mut. Ins. Co.*,
244 N.Y.S.2d 148 (N.Y. Sup. Ct., Broome County 1963) ...................................................... 19

*Howard v. Commonwealth Beneficial Ass'n.*,
    98 N.J.L. 267 (1922) ........................................................................................ 19

*In re Courdert Bros. LLP*,
    673 F.3d 180 (2d Cir. 2012) ............................................................................ 13

*June v. Town of Westfield*,
    370 F.3d 255 (2d Cir. 2004), *aff'd*, 260 Fed. App'x 380 (2d Cir. 2008) ................. 7

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
    313 U.S. 487 (1941) ........................................................................................ 13

*Kramer v. Phoenix Life Ins. Co.*,
    15 N.Y.3d 539 (2010) ...................................................................................... 17

*Lenz v. Associated Inns and Rest. Co.*,
    833 F.Supp. 362 (S.D.N.Y. 1993) .................................................................... 11

*Lincoln Nat. Life Ins. Co. v. Calhoun*,
    596 F. Supp.2d 882 (D. N.J. 2009) .................................................................. 10

*Malick v. Metropolitan Life Ins. Co.*,
    84 N.J.L. 437 (1913) ........................................................................................ 19

*Matter of Allstate Ins. Co. (Stolarz)*,
    81 N.Y.2d 219 (1993) ................................................................... 10, 11, 13, 14

*Merchant's Indem. Corp. of New York v. Eggleston*,
    37 N.J. 114 (1962) ................................................................................... 17, 18

*Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*,
    230 N.Y. 316 (1921) ........................................................................................ 18

*Meyers v. Schumann*,
    54 N.J. Eq. 414 (1896) .............................................................................. 18, 19

*New England Mut. Life Ins. Co. v. Caruso*,
    73 N.Y.2d 74 (1989) ................................................................................. passim

*Paduano v. Express Scripts, Inc.*,
    55 F. Supp. 3d 400 (E.D.N.Y. 2014) ................................................................ 11

*Peabody v. Weider Publications, Inc.*,
    No. 04 CIV. 2165 (GBD), 2006 WL 3802214 (S.D.N.Y. Dec. 26, 2006) .................. 7

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ............................................................................ 11

*Scalia v. Equitable Life Assur. Soc'y*,
251 A.D.2d 315 (2d Dep't 1998) ................................................................. 20

*Security Mut. Life Ins. Co. of N.Y. v. Rodriguez*,
65 A.D.3d 1 (1st Dep't 2009) ..................................................................... 20

*Thomas v. National Benefit Ass'n.*,
81 N.J.L. 349 (1911) ................................................................................. 19

*Torah Soft Ltd. v. Drosnin*,
224 F.Supp. 2d 704 (S.D.N.Y. 2002) ......................................................... 11

*U.S. Life Ins. Co. in the City of N.Y. v. Blumenfield*,
92 A.D.3d 487 (1st Dep't 2012) ................................................................. 21

*Wall v. Metropolitan Life Ins. Co.*,
239 A.D. 560 (2d Dep't 1933) .................................................................... 19

## Statutes

N.J. Stat. Ann. § 17B:25-4 ................................................................................... 10

N.Y. Ins. Law § 3203 ...................................................................................... 10, 15

N.Y. Ins. Law § 3205 ................................................................................ 15, 16, 17

New York Ins. Law § 14:2 .................................................................................. 19

## Other Authorities

68A N.Y. Jur.2d, Insurance § 1007 ...................................................................... 19

Restatement (Second) of Conflict of Laws § 192 (1971) ...............................passim

## PRELIMINARY STATEMENT

This case involves a $6.65 million life insurance policy, bearing policy no. 01N1404934 (the "Policy"), that the Defendant, Lincoln Benefit Life Company ("LBL" or "Defendant"), issued on June 5, 2008, insuring the life of Gabriella Fischer (the "Insured").[1]  Plaintiff, AEI Life, LLC ("AEI" or "Plaintiff"), acquired the Policy in 2011 and became the Policy's sole owner and beneficiary, which it is today.   In July 2013, LBL commenced an action in New Jersey Federal District Court to have the Policy declared void for lack of insurable interest, which action was later dismissed on jurisdictional grounds.   Nonetheless, as LBL had made clear its position that it would seek to have the Policy declared void, AEI filed suit in New York State court, which was removed to this Court, in 2014 for a declaration that the Policy is valid and in-force.   AEI now moves for summary judgment declaring the Policy to be valid and in-force. There are several reasons why, as a matter of law, the Policy should be declared valid.

Foremost, LBL is time-barred from contesting the Policy's validity, and was time-barred when it filed suit in New Jersey in 2013.   The Policy contains an incontestability clause which states that LBL cannot contest the Policy's validity more than two years after the Policy's issue date of June 5, 2008.   LBL missed this deadline by filing the New Jersey action over five years after the Policy's issue date.   Under New York law (which should apply to this dispute for the reasons discussed below), LBL was barred from contesting the Policy for any reason, including alleged lack of insurable interest, more than two years after the Policy's June 8, 2008 issue date. Moreover, the undisputed facts in this case show that New York law should apply to this dispute because the Insured was a New York resident at the time the Policy was issued.   Moreover, the

---

[1] Capitalized terms not otherwise defined herein are defined in Plaintiff's Local Rule 56.1 Statement in Support of its Motion for Summary Judgment ("SUMF"), which definitions are incorporated herein.

Policy's original owner and beneficiary, the Trust, had its situs in New York at the time the Policy was issued.  While the Policy contains a choice of law provision suggesting that the law of New Jersey might apply, the Restatement of Conflict of Laws makes clear that such a contractual choice of law provision should be disregarded where the contract is one of adhesion, like a life insurance policy, and the insurer attempts to insert a choice of law provision in the contract selecting the law of a jurisdiction other than where the insured is domiciled, which is the case here.  This Restatement rule is intended to prevent the insurer from unilaterally choosing another state's law, which would be disadvantageous to the insured and would cause a forfeiture of the policy, which is precisely what LBL is attempting to do here.  Thus, since there is no issue of material fact that the Policy is a New York Policy and that LBL failed to challenge the Policy within the two-year contestability period, the Court should grant summary judgment in AEI's favor and declare the Policy valid and in-force.

In addition, and separately, summary judgment should be granted in AEI's favor because LBL is prohibited from challenging the policy as a matter of law on grounds of waiver, estoppel or both.  The undisputed facts in this case following discovery demonstrate that in the fourteen months between the time that LBL filed suit in New Jersey and time this action was filed, in no less than 12 separate occasions LBL engaged in conduct, including written communications, that confirmed that LBL considers the Policy to be valid and in force.  In this 14-month period, LBL accepted four premium payments from AEI in connection with the Policy totaling an amount in excess of $150,000.  Neither these post-lawsuit premium payments, nor any of the prior premium payments that LBL has received and continues to hold in connection with the Policy, have been returned to AEI, the owner of record, by LBL.  Furthermore, LBL also issued no less than 8 verifications of coverage and other statements to AEI during this 14 month period, all of which

show that LBL considers the Policy to be valid and in-force.  This is a classic case of waiver/estoppel that should bar LBL from having any ability to have the Policy declared void. Thus, summary judgment in favor of AEI is proper on the separate and independent grounds of waiver, estoppel or both.

## I.　　FACTS

### A.　　The Policy

On June 5, 2008, LBL issued the Policy, insuring the life of the Insured in the amount of $6,650,000.  SUMF ¶ 1.  At the time the Policy was issued, the sole owner and beneficiary of the Policy was The Gabriella Fischer Trust 2/19/08 (the "Trust").  SUMF ¶ 2.  The Insured was a resident of Brooklyn, New York, at the time the Policy was applied for and issued.  SUMF ¶ 3. New York was the situs of the Trust at the time the Policy was issued.  SUMF ¶ 4.  Upon issuance of the Policy, the Policy was delivered to the Trust, by and through its trustee, in the State of New York.  SUMF ¶ 5.

The Policy sates, in part, as follows:

**Grace Period**

Except as provided in the Safety Net Premium provision below, if on any monthly activity day, the net surrender value is less than the monthly deduction for the current certificate month, you will be given a grace period of 61 days.  This certificate will be in force during the grace period.  If you do not make sufficient payment by the end of the grace period, the certificate will lapse.

　　　　　　*　　　　　　　*　　　　　　　*

**When Protection Starts**

The issue date is the date when this certificate becomes effective if the insured is then living, all underwriting requirements have been completed and the first payment has been made.

3

**Termination**

This certificate will terminate upon the earlier of the following events:

1)      The surrender of the certificate; or

2)      End of the grace period; or

3)      Death of the insured.

*            *            *

**Incontestability**

[LBL] will not contest this certificate after it has been in force during the lifetime of the insured for two years from the issue date unless one of the following exceptions occurs:

1)      Any increase in the face amount:  This contestable period with respect to the increase amount will be measured during the lifetime of the insured for two years from the effective date of the increase.

2)      Reinstatement of this certificate or any riders:   This contestable period will be measured during the lifetime of the insured for two years from the reinstatement date.

3)      An attached rider has a separate provision:   This contestable period will be measured in accordance with the incontestability provisions provided in the rider.

We may contest this certificate at any time for failure to make sufficient payments to cover the monthly deductions required to keep this certificate and its rides in force.

SUMF ¶ 6.

The term "issue date" is defined in the Policy as: "The date the certificate is issued, as listed on the Certificate Data pages.  It is used to determine the certificate years and certificate months in the certificate."  SUMF ¶ 7.  The issue date of the Policy, as listed on the Certificate Data pages, is June 5, 2008.  *Id.*

**B.      AEI Becomes The Policy's Sole Owner And Beneficiary**

On or about August 29, 2011, more than three years after the Policy was issued, the Trust

4

sold the Policy to Progressive Capital Solutions, LLC ("Progressive").   SUMF ¶ 8.  Thereafter, on or about August 31, 2011, AEI acquired from Progressive the interest in the Policy that Progressive had previously acquired from the Trust.  SUMF ¶ 9.  Plaintiff then approved the Trust's transfer of ownership and beneficiary of the Policy to AEI on or about September 5, 2011.  SUMF ¶ 10.

**C.      LBL Commences A Lawsuit To Have The Policy Declared Void**

On or about July 3, 2013, LBL commenced an action against AEI and other parties in the United States District Court for the District of New Jersey (the "New Jersey Action") under the following caption: *Lincoln Benefit Life Company v. AEI Life, LLC, et al.*, No. 13-cv-04117 (D. N.J.) (the "Rescission Action").  SUMF ¶ 11.  In its Complaint in the New Jersey Action, LBL sought, inter alia, a declaratory judgment that the Policy is void ab initio for lack of insurable interest.  SUMF ¶ 12.

**D.      LBL Continues To Accept Premium Even After Filing The New Jersey Action To Void The Policy**

From the time the New Jersey Action was commenced, on July 3, 2013, through the date the Complaint in this action was filed, September 3, 2014, AEI made premium payments on the Policy in the amount of $159,462, all of which have been paid directly to LBL.  SUMF ¶ 13.

On or about July 26, 2013, AEI made a premium payment to LBL in the amount of $50,000 in connection with the Policy.  SUMF ¶ 14.  Thereafter, on or about November 5, 2013, AEI made a premium payment to LBL in the amount of $45,000 in connection with the Policy. SUMF ¶ 15.  This premium payment was paid in response to a grace notice for the Policy that AEI received from LBL dated October 16, 2013.  *Id.*

On or about March 12, 2014, AEI made a premium payment to LBL in the amount of $54,780 in connection with the Policy.   SUMF ¶ 16.   This premium payment was paid in

response to a grace notice for the Policy that AEI received from LBL dated February 16, 2014. *Id.* Finally, on or about June 10, 2014, AEI made a premium payment to LBL in the amount of $9,682 in connection with the Policy.  SUMF ¶ 17.

All of the premium payments made by AEI in connection with the Policy that are referred to above have been accepted, retained and have not been returned by LBL.  SUMF ¶ 18.

**E.      LBL Continues To Issue Verifications Of Coverage For The Policy Even After Filing The New Jersey Action To Void The Policy**

Between July 3, 2013 and September 3, 2014, LBL has also issued the following five VOCs for the Policy: (i) the February 24 VOC; (ii) the March 18 VOC; (iii) the April 22 VOC (iv) the May 14 VOC; and (v) the June 19 VOC.  SUMF ¶¶ 19-20.  The February 24, March 18, April 22 and June 19 VOCs each listed the Policy's "Status" as "Active."  SUMF ¶ 21.  The May 14 VOC contained the following statement: "**Is the policy in force?   Yes**" (emphasis added). SUMF ¶ 22.

**F.      LBL Continues To Verify That The Policy Is Active And In Force Even After Filing The New Jersey Action To Void The Policy**

Between July 3, 2013 and September 3, 2014, LBL issued additional correspondence that verified that LBL considers the Policy to be active and in force.  SUMF ¶ 23.  Specifically, on or about August 9, 2013, LBL issued a Statement of Insurance Coverage for the Policy, which stated, in part, that "Lincoln Benefit Life Company hereby verifies that the policy described below was issued on the date specified and **was in force** on the date of this statement." SUMF ¶ 24 (emphasis added).  Furthermore, on or about November 19, 2013, LBL issued an illustration for the Policy, which, again, reflected the Policy as being active and in-force.  SUMF ¶ 25. Finally, on or about August 18, 2014, LBL provided indication, in writing, that the Policy is considered by LBL to be active and in force.  SUMF ¶ 26.

The Policy has never terminated, lapsed or been surrendered.  SUMF ¶ 27.  Furthermore, LBL has admitted in its pleading that, "absent a declaration that the [Policy] is void, canceled, or otherwise terminated, and subject to its rights in connection with this action, **Lincoln Benefit will treat the [Policy] as valid and enforceable**."  SUMF ¶ 28 (emphasis added).

G.      **Relevant Procedural History In This Action**

On or about September 3, 2014, AEI filed the Complaint in this action in the Supreme Court of the State of New York for Kings County.  SUMF ¶ 29.  On or about October 31, 2014, LBL filed a Notice of Removal, removing the action this Court.  SUMF ¶ 30.  On December 17, 2014, LBL filed a Motion to Dismiss or Alternatively Stay this Action which motion was denied by this Court on February 24, 2015.  SUMF ¶ 31.  On April 4, 2015, LBL filed an Answer to the Complaint in this action.  SUMF ¶ 32.

## II.      ARGUMENT

A.      **Standard of Review**

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Peabody v. Weider Publications, Inc.*, No. 04 CIV. 2165 (GBD), 2006 WL 3802214, at *3 (S.D.N.Y. Dec. 26, 2006) (quoting FRCP Rule 56(c) and citing *June v. Town of Westfield,* 370 F.3d 255, 257 (2d Cir. 2004) *aff'd,* 260 F. App'x 380 (2d Cir. 2008)(summary order)).  "There is no issue of material fact unless the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Peabody*, 2006 WL 3802214, at *3 (internal quotation marks and citation omitted).

**B.**   **The Choice of Law Provision in the Policy is Ineffective – New York's Incontestability Rule Applies**

While the Policy purports to contain a choice of law provision requiring the application of New Jersey law, that choice of law provision is ineffective as a matter of law.  Restatement (Second) of Conflict of Laws § 192 (1971) ("Restatement") sets forth the conflict of laws rules applicable to life insurance policies and provides as follows:

> The validity of a life insurance contract issued to the insured upon his application and the rights created thereby are determined, in the absence of an <u>effective</u> choice of law by the insured in his application, by the law of the state where the insured was domiciled at the time the policy was applied for, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied. [Emphasis added]

Comment *e* to the above-quoted rule sets forth the rules that are to be used to determine if a choice of law provision in a life insurance policy will be "effective," and states as follows:

> *e. Choice of law by the parties.* Except as stated below, effect will not be given to a choice of law provision in a life insurance contract designating a state whose local law gives the insured less protection than he would receive under the otherwise applicable law, which, as stated in Comment *c*, will usually be the local law of the state where the insured was domiciled at the time the policy was applied for. One factor serving to explain disregard in this instance of the chosen law is that life insurance contracts are drafted unilaterally by the insurer, and the insured is then given the opportunity on a "take-it-or-leave-it" basis of adhering to their terms. The situation is different when the insured at the time he applies for the insurance is given a choice between having the contract governed by the local law of the state of his domicil or of some other state and expressly chooses in his application the local law of the other state. In such a situation, the insured exercises a free choice and the chosen law should be applied provided that the requirements of the rule of § 187 are satisfied. One of these requirements is that application of the law of the chosen state must not be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of §

8

188, would be the state of the applicable law in the absence of an effective choice of law by the parties. This latter state would usually be that where the insured was domiciled at the time the policy was applied for. Since life insurance is a matter of intense public concern and since the major purpose of legislation in this area is to protect the individual insured and his beneficiaries, it might well be repugnant to a fundamental policy of the state of the otherwise applicable law to give the insured less protection than this state would accord him under its own local law (see § 187, Comment *g*).

On the other hand, a choice-of-law provision, whether contained in the contract or in the application and whether or not freely agreed to by the insured, may be given effect if to do so would be to the advantage of the insured. None of the policy considerations discussed above stand in the way of giving the insured greater protection than he would receive under the otherwise applicable law.

**Illustration:**

1. In state X, the A insurance company issues a life insurance policy insuring the life of B. A is incorporated and has its "home office" in X while B is domiciled in state Y. The policy, which is delivered to B in Y, contains a standard provision stating that the rights of the parties under the policy shall be determined by X law. In his application for the policy, B made a misstatement which under the local law of X would serve as a complete defense to the insurer in a suit on the policy, but would not have this effect under the local law of Y. Effect will not be given to the choice of law provision.

Restatement § 192 cmt. e.  Thus, as Comment *e* and its Illustration make clear, where (as here):

(1) an insurer unilaterally inserts a choice of law provision in the life insurance contract that

states that that the law of a state other than where the insured is domiciled at the time the policy

is applied for will govern, (2) the insured does not have the option of choosing the law of the

state of his domicile, (3) the application of the law of the state chosen by the insurer would result

in a forfeiture of the policy, and (4) the application of the law of the insured's state of domicile

9

would result in the policy being enforceable, effect will not be given to the choice of law provision in the insurance contract chosen by the insurer.

Here, there is no dispute that the insured was domiciled in New York at the time of the application for the Policy.   SUMF ¶ 3; Biderman Decl., Exh. 1 (Complaint) at ¶ 11, Exh. 3 (Policy) at 26; *see also* Restatement § 192 cmt. b ("*Location of insured's domicil.*   In the absence of strong countervailing considerations, the insured will be held to be domiciled in the state of which he describes himself as a resident in his application to the insurance company.").   Further, under New York law, a life insurer cannot challenge the validity of a policy issued by it – even on grounds of lack of insurable interest – more than two years after the policy has been issued. *See New England Mut. Life Ins. Co. v. Caruso*, 73 N.Y.2d 74 (1989) (citing N.Y. Ins. Law § 3203(a)(3)).   Here, the Policy contains an issue date of June 5, 2008 and LBL commenced the New Jersey Action on July 3, 2013, more than two years after the Policy had been issued. SUMF ¶¶ 7, 11.

New Jersey also has an incontestability statute, N.J. Stat. Ann. § 17B:25-4 (West). Whether New Jersey's incontestability statute prohibits an insurer from challenging a policy on insurable interest grounds after two years is an issue that has not been resolved by the New Jersey courts.  *See Lincoln Nat. Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 890 (D. N.J. 2009); *see also Am. Nat. Ins. Co. v. Conestoga Settlement Trust*, 442 S.W.3d 589, 594 (Tex. Ct. App. 2014), review denied (Mar. 13, 2015) ("We begin with New Jersey law, noting that it does not appear the New Jersey Supreme Court, nor any of its intermediate appellate courts, has directly addressed whether the lack of an insurable interest at the inception of a life insurance policy renders it void ab initio.").   Under New York law, "the first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws

10

of the jurisdictions involved." *Matter of Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 613 N.E.2d 936 (1993). If there is no conflict, then this Court should apply the law of the forum. *Id.* "In New York, it is required that a party wishing to apply the law of a foreign state show how that law differs from the forum state's law. Failure to do so results in the application of New York law." *Haywin Textile Prods., Inc. v. Int'l Fin. Inv. and Commerce Bank Ltd.*, 152 F.Supp. 2d 409, 413 (S.D.N.Y.2001).

Where the law of the foreign jurisdiction is unsettled (which is the case here), then a New York court is to presume that the law of the foreign jurisdiction resembles that of forum (New York). *See Torah Soft Ltd. v. Drosnin*, 224 F.Supp. 2d 704, 713 (S.D.N.Y. 2002) ("when foreign law is unsettled, courts initially presume that the law on the question at issue would resemble that of the forum.") (citing *Rogers v. Grimaldi*, 875 F.2d 994, 1002 n.10 (2d Cir. 1989); *Anglo American Ins. Grp., P.L.C. v. CalFed, Inc.*, 899 F.Supp. 1070, 1077 (S.D.N.Y. 1995); *Lenz v. Associated Inns and Rest. Co.*, 833 F.Supp. 362, 378 n.16 (S.D.N.Y. 1993); *see also Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 428 (E.D.N.Y. 2014) (quoting *Rogers v. Grimaldi*, 875 F.2d at 1003 and, "[a]ccordingly, . . . presume[ing] that Minnesota law will resemble New York law.").

Moreover, it is clear that New York's incontestability rule unequivocally <u>does</u> prohibit such a challenge more than two years from the date the policy was issued (which is the case here). Therefore, under Comment *e* of Restatement § 192, the law of New York (the law of the domicile of the insured) must apply irrespective of the choice of law provision in the Policy because the application of New York law would result in the Policy being enforceable, whereas the application of New Jersey law, if deemed to allow an insurer to challenge a policy for lack of insurable interest after two years (a unsettled legal question), would result in a forfeiture.

11

1.     **The Principles in Restatement § 6 Do Not Require the Application of New Jersey Law**

As noted above, Restatement § 192 requires in the context of life insurance that the law of the state of the insured's domicile apply "unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied." The principles in Restatement § 6 are: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied." Restatement § 6(2). Here, since nearly all of the relevant significant contacts – including the place where the insured and trust were domiciled – were in New York when the Policy was applied for, and the only contact with New Jersey is an indication in the application that it was signed by the insured in New Jersey, it is clear that, under the principles enunciated in Restatement § 6(2), New York has a greater interest in having its law applied to this dispute than New Jersey. This is especially true considering that under New York law it is clear, based on New York's incontestability rule, that LBL is time-barred from seeking to challenge the validity of the Policy on insurable interest grounds. This is well-settled law in New York, resulting from New York's strong public policy to prevent a forfeiture after two years from the date the policy was issued. *See New England Mut. Life Ins. Co. v. Caruso,* 73 N.Y.2d 74 (1989) and Section II.C., *infra*.

This conclusion is further buttressed by Comment *c* to Restatement § 192, which sets forth the "rationale" for the rule and states, in relevant part, as follows:

There are several reasons why such importance is attributed to the state where the insured was domiciled at the time the policy was applied for. Life insurance is a matter of intense public concern, as is evidenced by the fact that it has been subjected to extensive statutory regulation by the great majority of states. Issues arising under a life insurance policy should be determined by the local law of the state which has the dominant interest in the insured with respect to these issues, and this state will usually be that where the insured was domiciled at the time the policy was applied for. Likewise, a major purpose of life insurance legislation is to protect the individual insured and his beneficiaries, and the courts have sought to assist in the achievement of this purpose by means of their choice-of-law rules. They have done so by requiring that, at least as a general rule, the insured should receive the protection accorded him by the local law of his domicil.

Restatement § 192 cmt. c.

Accordingly, under the Restatement, it is clear that the choice of law provision unilaterally inserted in the Policy by LBL should be disregarded and the law of New York, the insured's domicile, should govern this dispute in its entirety.

## 2.   New York Law Applies Under a Traditional Conflict of Laws Analysis

Even under a traditional conflict of laws analysis, New York law should govern this contractual dispute.  "When a federal district court sits in diversity, it generally applies the law of the state in which its sits, including that state's choice of law rules."  *In re Courdert Bros. LLP*, 673 F.3d 180, 186 (2d Cir. 2012) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941)) (footnote omitted).  New York's follows a "center of gravity" or "grouping of contacts" analysis for determining which state's law applies in a contract case.  *Globalnet Financial.com, Inc. v. Frank Crystal & Co.,* 449 F.3d 377, 383 (2d Cir.2006) (quoting *Allstate Ins. Co. v. Stolarz,* 81 N.Y.2d 219, 226 (1993); other citation and internal quotation marks omitted).  Under that analysis, relevant considerations include: "the place of contracting, negotiation and

performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Stolarz,* 81 N.Y.2d at 227.

Here, the Insured and the Trust were both New York residents when the Policy was applied for.  Indeed, the only relationship to New Jersey is that the application indicates that it was signed by the Insured there.  This contact, however, is insufficient under the center of gravity test.  In *Fleet Messenger Service, Inc. v. Life Ins. Co. of N. Am.*, 315 F.2d 593 (2d Cir. 1963), the beneficiary and insured of the subject life insurance policy resided in New York; the life insurer was a Pennsylvania corporation; and "[t]here were also some contacts with New Jersey; the application for the policy was executed in that state, and the first premium was tendered to one of the defendant's representatives there."  *Fleet Messenger*, 315 F.2d at 596. The Second Circuit concluded that "[t]he New Jersey contacts [we]re fortuitous . . ." and, accordingly, applied New York law.

More recently, the Southern District of New York similarly held that, under New York's center of gravity analysis, New York law would apply to a dispute over a life insurance policy where (as here) all of the significant contacts were in New York and the only contact with another jurisdiction was that the application was apparently signed there (in Colorado):

> As noted, the Policy application states Denver, Colorado as the place of execution, even though no party has proffered an explanation for this. The parties agree, rather, that no relevant individual or concern has a tie to Denver and that the application for the Policy (and the negotiation thereof) took place in New York. Likewise, the insured risk, Diana, was domiciled in New York, as were all relevant individuals at the time the Policy was issued. The center of gravity for the Policy therefore is New York, not Colorado or elsewhere.

*Am. Gen. Life Ins. Co. v. Diana Spira 2005 Irrev. Life Ins. Trust*, No. 08-cv-06843(NSR), 2014 WL 6694502, at *6 (S.D.N.Y. Nov. 5, 2014).

14

Thus, New York's center or gravity analysis requires the application of New York law here.

**C.** **New York's Incontestability Rule Prohibits LBL from Challenging the Validity of the Policy on Insurable Interest Grounds**

Under well-settled New York law, LBL is time-barred from challenging the validity of the Policy on insurable interest grounds.  In *New England Mut. Life Ins. Co. v. Caruso,* 73 N.Y.2d 74, 535 N.E.2d 270 (1989), the New York Court of Appeals held that an incontestability clause in a life insurance policy prohibited a life insurer from attempting to challenge the validity of the policy on grounds of lack of insurable interest more than two years after the policy had been issued.  *Caruso,* 73 N.Y.2d at 78.  The Court held that the 2-year statutory bar was "absolute." *Id.* (citing N.Y. Ins. Law § 3203(a)(3)) (emphasis added).

In *Caruso,* the plaintiff life insurer argued that New York's insurable interest statute made life insurance policies issued without an insurable interest void *ab initio* and, therefore, a policy that is void from inception (as opposed to voidable) cannot be validated after two years by New York's incontestability statute.  In analyzing this issue, the Court of Appeals first noted that the provisions of N.Y. Ins. Law § 3205, New York's insurable interest statute, "do not make life insurance contracts void if the policyholder lacks an insurable interest in the insured's life." *Caruso,* 73 N.Y.2d at 79.  The Court of Appeals focused on the word "procured" in Section 3205, and concluded that "nothing in the statutory scheme makes void *ab initio* policies acquired by one lacking an insurable interest or forecloses the application of an incontestable clause to bar an insurer's disclaimer of liability." *Id.*

The life insurer in *Caruso* also argued that the public policy underlying New York's insurable interest law -- to prevent wagering policies -- should override the enforceability of an incontestability provision in a policy, even if mandated by statute.  The Court of Appeals

rejected this argument.  It noted that "[f]reedom of contract is deeply rooted in public policy,"

and that "[t]he policy determination depends upon a balancing of society's interest in

enforcement of a particular provision in a contract, the incontestability clause in this case, against

its interest in preventing gambling."  *Caruso*, 73 N.Y.2d at 81.

> In the case before us it is difficult to conclude that enforcement of
> the claim is contrary to public policy when the policy is not void
> *ab initio* under the statute, as we construe it, and is enforceable
> against the insurance company under our prior decisions.  * * *
> Moreover, the policy concerns at issue are protected by the penal
> statutes of this State, decisions which prevent an individual from
> profiting from his or her own wrong (*see, e.g., Riggs v. Palmer*,
> 115 NY 506), and section 3205(b)(3)[2] which permits the insured
> or a representative of the insured to recover proceeds paid to a
> policyholder without an insurable interest.   In view of these
> general restraints the need for further deterrents in this area to
> advance public safety would appear marginal.  Balanced against
> that need, such as it is, is our conclusion that a change in the rule
> would result in forfeiture and an unnecessary advantage to
> plaintiff.

*Id.*

Since New York's insurable interest statute "requires that the policyholder have an

insurable interest in the life of the decedent only at the time the contract was made," the Court of

Appeals concluded that requiring evidence of insurable interest after the expiration of the

contestability period "could not only impose an undue burden on the policyholder but also run

counter to the policy considerations underlying incontestability requirements."   *Caruso*, 73

N.Y.2d at 82.  The Court of Appeals concluded that the life insurer should have the burden of

investigating and determining insurable interest before the expiration of the contestability period.

*Id.* at 82 ("the burden rested on it to investigate in a timely manner or ignore the matter at its

peril.").

---

[2] The provisions of N.Y. Ins. Law § 3205(b)(3) at the time the *Caruso* opinion was issued have
since been moved to subsection (b)(4) of the statute.

Most recently, the Court of Appeals, in *Kramer v. Phoenix Life Ins. Co.*, 15 N.Y.3d 539 (2010), considered whether New York's insurable interest statute, N.Y. Ins. Law § 3205, permits an insured to procure a policy on his or her own life through a life insurance trust and immediately assign the policy to a person without an insurable interest in the insured's life. *See Kramer*, 15 N.Y.3d at 545. In that case, as in this one, the insurer alleged that the insured obtained the policy for the sole purpose of assignment and never intended for the policy to benefit a person with an insurable interest. *Id.* Applying N.Y. Ins. Law § 3205(b)(1), the *Kramer* Court held that an individual was free to purchase a life insurance policy on his or her own life and immediately transfer the policy to one or more persons without an insurable interest, even if the policy was obtained for the purpose of such a transfer. *Id.* at 553.[3] The *Kramer* Court specifically denied the life insurer parties' request to reconsider application of the incontestability rule. *Id.* at 548 n.4.

Therefore, LBL is prohibited under New York law from attempting to challenge the validity of the Policy on insurable interest grounds at this late date.

**D.   The Doctrine of Waiver or Estoppel Prohibits LBL from Challenging the Validity of the Policy**

Even if New Jersey law were to apply to the Policy, summary judgment should be granted in favor of AEI because LBL is prohibited by the doctrine of waiver or estoppel from attempting to challenge the validity of the Policy.

Under New Jersey law, when an insurer learns of grounds to challenge the validity of a policy that it has issued, it must quickly elect which remedy it wishes to pursue. *See Merchant's*

---

[3] Effective May 18, 2010, the New York Legislature added several new provisions to the N.Y. Ins. Law (Art. 78), which regulate life settlement transactions and prohibits "stranger originated life insurance" transactions, as defined therein. Since these statutory provisions became effective after the Policy was issued and are not retroactive, they are wholly irrelevant to the instance dispute. *See Kramer*, 15 N.Y.3d at 549 n.5.

*Indem. Corp. of New York v. Eggleston*, 37 N.J. 114, 130 (1962); *see also id.* at 131 ("if a carrier receives information suggesting fraud or breach of contract, it must seek the facts with reasonable diligence, and having acquired them it must within a reasonable period decide whether to continue to perform.").  Upon learning of such grounds, the insurer may rescind or affirm the policy.  *Id.* at 130.  If the insurer wishes to rescind the policy, it must then return the premiums that have been paid to it for the policy.  *Id.*  If the insurer chooses to affirm the policy, it can then retain the premiums paid for the policy and pursue a claim for damages.  *Id.*  But the insurer cannot pursue both remedies.  *Id.* at 131.  "If [the insurer] elects to continue with the [policy], the election is final and the [policy] is affirmed, not because the [insurer] wants it to be, but because the law makes it so."  *Id.*  "And if by [its] conduct [the insurer] affirms the [policy], [it] cannot be heard to say that [it] did not 'voluntarily' or 'intentionally' relinquish [its] right to call of[f] the deal."  *Id.* (citations omitted).  "Neither consideration nor detriment is necessary to support the finality of the choice."  *Id.* (citation omitted).[4]

An insurer's challenge to a policy issued by it on the ground of lack of insurable interest – the ground that LBL has asserted in this lawsuit as a basis to challenge the validity of the Policy – is subject to the doctrine of waiver.  *See Meyers v. Schumann*, 54 N.J. Eq. 414, 417 (1896); *see also* 3 Couch on Insurance § 41.8 (3d ed. 2015) ("In a number of states, it has been

---

[4] New York also adheres to the election of remedies doctrine. *See Merry Realty Co. v. Shamokin & Hollis Real Estate Co.*, 230 N.Y. 316 (1921); *Conrow v. Little*, 115 N.Y. 387 (1889).

held that the insurer may validly waive the defense of lack of insurable interest or be estopped from asserting it.") (citing, among other cases, *Meyers*, *supra*).[5]

Where, as here, an insurer accepts premiums on a policy that it believes to be void, it waives any rights that it may have to, or is estopped from seeking, a judicial declaration that the policy is void.  *See Howard v. Commonwealth Beneficial Ass'n.*, 98 N.J.L. 267, 268 (1922) ("But where, as in this case, the application has been received and accepted with knowledge of the relationship existing between the insured and the beneficiary, and premiums accepted, the association has waived the by-law, and is estopped from setting it up as a defense to payment of the policy."); *Malick v. Metropolitan Life Ins. Co.*, 84 N.J.L. 437, 443 (1913) ("the situation presented by the issuance of this policy, and the continued collection of premiums upon which the policy holder was clearly paying under the impression that her policy was valid, has in one of its aspects the force of a contracting representation by the company that the policy holder was right in the impression under which she continued to pay her premiums.  If such a representation be true, the policy is in fact valid; if it is false, the company should not be permitted to take advantage of its own false representation."); *Thomas v. National Benefit Ass'n.*, 81 N.J.L. 349 (1911) ("But the writing and delivery of the policy, and the acceptance by the defendant of premiums, amounts to a practical interpretation of the policy by the parties, and it would be a fraud to permit the defendant thus to contract and receive the premiums, with full knowledge that the policy was void.").  In addition, New Jersey courts have recognized waiver in cases where

---

[5] The same is true in New York. *See Caruso*, *supra* (life insurer barred from challenging validity of policy on insurable interest grounds after two years from date of issuance); *see also Holmes v. Nationwide Mut. Ins. Co.*, 244 N.Y.S.2d 148, 152 (N.Y. Sup. Ct., Broome County 1963) (holding that insurer's attempt to challenge life policy on insurable interest grounds barred by estoppel based on acceptance of premiums with knowledge of bases to challenge policy); 68A N.Y. Jur.2d, Insurance § 1007 ("the insurer may validly waive the defense of lack of insurable interest or may be estopped from asserting it.") (citing *Wall v. Metropolitan Life Ins. Co.*, 239 A.D. 560 (2d Dep't 1933); 31 N.Y. Prac., New York Ins. Law § 14:2 (same).

the insurer "engaged in some other course of conduct that clearly manifested an intent in the part of the insurer to continue coverage." *Barna v. McCarthy*, No. A-2328-06T3, 2007 WL 3354292, at *2 (N.J. Super. Ct. App. Div. Nov. 14, 2007) (citing cases).

Likewise, in New York, "[i]t is well settled that the continued acceptance of premiums by the carrier after learning of facts which allow for rescission of the policy, constitutes a waiver of, or more properly an estoppel against, the right to rescind." *Fidelity and Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.*, 540 F.3d 133, 144 (2d Cir, 2008) (quoting *Scalia v. Equitable Life Assur. Soc'y*, 251 A.D.2d 315, 315 (2d Dep't 1998) (citing *Bible v. John Hancock Mut. Life Ins. Co.*, 256 N.Y. 458, 462 (1931) (internal quotation marks omitted)); *see Continental Ins. Co. v. Helmsley Enterprises, Inc.*, 211 A.D.2d 589, 589 (1st Dep't 1995) (holding that trial court properly determined that insurer waived its right to seek rescission of policy when it knowingly accepted premium payments for several months following discovery of information upon which it relied to challenge validity of policy).

In *Am. Gen. Life Ins. Co. v. Salamon*, 483 Fed. App'x 609 (2d Cir. 2012) (summary order), the Second Circuit affirmed summary judgment in favor of the owner of the life policy on grounds of waiver where the insurer, after notifying the policy owner that it was rescinding the policy, accepted a premium payment, maintained the policy on "active" status, sent a grace notice demanding further premium, sent a lapse notice, and at no point refunded any paid premium. The Second Circuit noted that, "[w]aiver under New York law requires only that the insurer accept premium payments after 'learning of facts which allow for the rescission of the policy.'" *Salamon*, 483 Fed. App'x at 612 (quoting *Security Mut. Life Ins. Co. of N.Y. v. Rodriguez*, 65 A.D.3d 1, 9-10 (1st Dep't 2009)); *see also Garbin v. Mut. Life Ins. Co. of N.Y.*, 356 N.Y.S.2d 741, 742 (1st Dep't App. Term 1974) ("The collection and retention of four

payments over a full year cannot be overlooked as mere inadvertent and temporary acceptance of premium . . . .").  An insurer's inadvertent acceptance of premium is irrelevant, *Salamon*, 483 Fed App'x at 611; and an insurer's inability to reject premium payments because of its computer system is no excuse, *U.S. Life Ins. Co. in the City of N.Y. v. Blumenfield*, 92 A.D.3d 487, 488 (1st Dep't 2012).  Indeed, an insurer's attempt to reserve its rights while accepting premiums is unenforceable for lack of mutuality in New York, and this rule applies where the insurer has accepted premiums after commencing a rescission action.  *See Blumenfield*, 92 A.D.3d at 489 (citations omitted).

Here, as outlined above and evidenced by documents that have been produced in this action (attached to the Biderman Decl. submitted herewith), there can be no dispute that *after* July 3, 2013, LBL: (a) accepted on no less than four separate occasions premium payments for the Policy and has continued to retain those premiums; and (b) has engaged in other conduct, including sending to AEI on no less than 8 separate occasions VOCs, correspondence and statements stating that it is the owner of the Policy and that the Policy is in full force and effect. SUMF ¶¶ 13-17, 19-26; Biderman Decl., Exhs. 9-12 and 15-22 (Additional Payment Receipts dated July 26, 2013, November 5, 2013, March 12, 2014 and June 10, 2104; February 24, March 18, April 22, May 14 and June 19 VOCs; Statement of Insurance Coverage dated August 9, 2013; Flexible Premium Adjustable Life Insurance In Force Illustration, dated November 19, 2013; and E-mail exchange dated August 15, 2014 and August 18, 2014).  Thus, in the fourteen months that followed LBL's filing of the New Jersey Action in which it claimed that the Policy was void, LBL committed no less than twelve overt and separate acts reflecting that it considered the Policy to be active and in-force.  *Id.*  Indeed, LBL's Answer even admits that, "absent a declaration that the [Policy] is void, canceled, or otherwise terminated, and subject to its rights in

21

connection with this action, **Lincoln Benefit will treat the [Policy] as valid and enforceable**.”

Biderman Decl., Exh. 2 (Answer) at ¶ 22 (emphasis added); SUMF ¶ 16 (emphasis added).  This

is a classic case of waiver/estoppel.

### III.    CONCLUSION

Plaintiff's motion for summary judgment should be granted in its entirety.

Dated:    January 19, 2016

**ARENT FOX LLP**

By:    /s/ Eric A. Biderman
     Eric A. Biderman
     Julius A. Rousseau, III
     James M. Westerlind
     1675 Broadway
     New York, New York  10019
     Telephone: (212) 484-3900
     Facsimile:  (212) 484-3990
     E-Mail: eric.biderman@arentfox.com
             jule.rousseau@arentfox.com
             james.westerlind@arentfox.com

*Attorneys for Plaintiff AEI Life, LLC*