UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**JUDGMENT,
MEMORANDUM & ORDER**

AEI LIFE, LLC,

                      Plaintiff,

    – against –

LINCOLN BENEFIT LIFE COMPANY,

                  Defendant.

14-CV-6449

**PARTIES**

**AEI Life, LLC**

**ALS Capital Ventures, LLC**

**Joel Jacob**

**APPEARANCES**

Eric A. Biderman
Julius A Rousseau
James M. Westerlind
**Arent Fox LLP**
1675 Broadway
New York, NY 10019
(212) 484-3900

Michael Paneth
**Treff & Lowy PLLC**
342 Bedford Avenue
Brooklyn, NY 11211
718-274-8888

William J. O'Mahony
**Paneth & O'Mahony PLLC**
2329 Nostrand Avenue, Suite M-300
Brooklyn, NY 11210
718-274-8888

Avi Rosengarten
1704 Avenue M
Brooklyn, NY 11230
718-627-4460

Thomas Charles Landrigan
Joshua Adam Scerbo
**Cohen, LaBarbera & Landrigan, LLP**
40 Mathews Street, Suite 203
Goshen, NY 10924
845-291-1900

**Innovative Brokers**

David BenHaim
Ira S. Lipsius
**Lipsius-BenHaim Law, LLP**
80-02 Kew Gardens Road
Kew Gardens, NY 11415
212-563-1710

**JRJ Services, Inc.**

Avi Rosengarten
1704 Avenue M
Brooklyn, NY 11230
718-627-4460

Thomas Charles Landrigan
Joshua Adam Scerbo
**Cohen, LaBarbera & Landrigan, LLP**
40 Mathews Street, Suite 203
Goshen, NY 10924
845-291-1900

**Lincoln Benefit Life Company**

Jason Gosselin
Katherine Leigh Villanueva
Leslie J. Coletti
**Drinker Biddle & Reath LLP**
One Logan Square
18th and Cherry Streets
Philadelphia, PA 19103
(215) 988-2535

**JACK B. WEINSTEIN, Senior United States District Judge:**

## Table of Contents

I.    Introduction                                                                                           1

II.   Facts                                                                                                      2

III.  Arguments                                                                                             3

   A.    AEI                                                                                                    3

   B.    LBL                                                                                                    4

   C.    September 23 and September 26, 2016 Evidentiary Hearing               5

   D.    November 22, 2016 Hearing                                                          5

IV.   Law                                                                                                        6

   A.    Summary Judgment                                                                       6

   B.    Choice of Law                                                                              7

   C.    Findings of Fact Based on Evidentiary Hearing                            8

   D.    Incontestability Clauses                                                             9

V.    Application of Law to Facts                                                               12

   A.    Choice of Law                                                                            12

   B.    Incontestability Clause                                                             18

VI.   Equity and Laches                                                                            20

VII.  Conclusion                                                                                        20

## I. Introduction

This case challenges the validity of a "stranger-owned life insurance" ("STOLI") policy issued by defendant Lincoln Benefit Life Company ("LBL"). LBL commenced a declaratory judgment action in the federal district court in New Jersey seeking to have two of its life insurance policies (Policy No. 01N1404844 and Policy No. 01N1404934) declared invalid. That action was dismissed for lack of personal jurisdiction. The Court of Appeals for the Third Circuit reversed. The case was then transferred to this court. *See* 16-CV-2049 ("New Jersey Action"); *Lincoln Benefit Life Co. v. AEI Life, LLC*, No. 13-CV-4117 (D.N.J. Apr. 26, 2016).

While the New Jersey Action was on appeal to the Court of Appeals for the Third Circuit, AEI Life, LLC ("AEI"), as beneficiary of one of the policies (Policy No. 01N1404934) sued on in the New Jersey Action by LBL, filed an action in the Federal District Court for the Eastern District of New York. *See* 14-CV-6449 ("New York Action"). References to fact finding and law by the court in the instant memorandum and order refer only to the New York Action, 14-CV-6449.

The policy was issued in 2008. LBL has been receiving premiums ever since then. If New York law applies – as this court now holds – its two-year incontestability clause controls, and the policy is enforceable even if it had been obtained by fraud.

The New York and New Jersey Actions were not consolidated. The New Jersey Action was stayed pending a resolution of the New York Action. Order, 14-CV-6449, Aug. 4, 2016, ECF No. 68; Hr'g Tr., Aug. 3, 2016, at 68:12-68:23.

AEI moves for summary judgment in the New York Action on two grounds: (1) LBL is barred from contesting the validity of the insurance policy under the policy's incontestability clause; and (2) LBL has waived its rights to challenge validity – or should be estopped from

challenging validity by laches and general equitable principles.

The case turns on whether New York or New Jersey substantive law applies. New York life insurance incontestability law rejects an insurer's defense that after two years a policy was invalid at its inception. Under New Jersey law, a policy may be challenged at any time after issuance if fraud was committed in the policy application process.

Since this court sits in New York, in deciding what state substantive law applies the court looks to New York's conflicts law. New York applies the choice of law clause in the insurance contract, unless the contract was fraudulently obtained (as it was here). If there was fraud at the inception, New York then applies its center of gravity rule in choosing which state law governs.

The policy owned by AEI was fraudulently procured so that the clause in the policy favoring New Jersey law is not in force. The center of gravity here is as clearly fixed in New York as is the Empire State Building. New York substantive law therefore applies – and with it, as a matter of law – its two-year applicable incontestability rule.

The court conducted a full bench trial on the preliminary issues of fraud and contacts with New York and the state of New Jersey. It concluded: (1) that there was fraud in the inducement, and (2) that every contact of significance was in New York. The policy is thus incontestable and enforceable under New York law.

## II.    Facts

The factual background is detailed in the court's February 24, 2015 and December 21, 2015 memoranda and orders, both of which addressed and denied motions to transfer venue. *See AEI Life, LLC v. Lincoln Benefit Life Co.*, 305 F.R.D. 37, 40-42 (E.D.N.Y. 2015); *AEI Life, LLC v. Lincoln Benefit Life Co.*, No. 14-CV-6449, 2015 WL 9286283, at *1-2 (E.D.N.Y. Dec. 21, 2015). Those memoranda and orders are incorporated as if fully set forth in the present memorandum.

In 2008 LBL issued a life insurance policy (Policy No. 01N1404934) for over six million dollars on the life of Gabriela Fischer. The initial owner and beneficiary of the policy was "The Gabriela Fischer Trust." The Trust's initial beneficiary was Ms. Fischer's son, Irving Fischer. Shortly before the Trust purchased the policy, one Shlomo Reichnitz wired one million dollars to be deposited in the Trust's bank account. *AEI Life*, 305 F.R.D. at 40. On August 29, 2011, the insurance policy was sold by the Trust to Progressive Capital Solutions, LLC. Several days later, AEI, the present owner, purchased the policy, and it has been paying premiums ever since. *Id.*

LBL contends that the policy was executed in fraud and is unenforceable. AEI, the current bona fide purchaser-owner of the policy, responds that the policy is enforceable under New York's two-year incontestability rule. *AEI Life*, 305 F.R.D. at 41; Pl.'s Mem. of Law in Supp. of its Renewed Mot. for Summ. J., 14-CV-6449, June 9, 2016, ECF No. 55-1 ("Pl.'s Summ. J. Mot.").

In April 2016, AEI's first motion for summary judgment was denied with leave to renew. Order, 14-CV-6449, Apr. 13, 2016, ECF No. 51. Discovery was extended so the parties could obtain any evidence with respect to the circumstances of issuance. *Id.*; Hr'g Tr., 14-CV-6449, Apr. 13, 2016, at 20:20-22:1.

AEI renewed its motion for summary judgment in June 2016. Additional evidence was submitted, particularly in the form of the deposition of Joel Jacob, the insurance agent who brokered the policy. *See* Decl. of Eric A. Biderman in Supp. of Pl.'s Renewed Mot. for Summ. J. at Ex. 25, 14-CV-6449, June 9, 2016, ECF No. 55-28 (May 10, 2016 Dep. Tr. of Joel Jacob).

## III. Arguments

### A. AEI

AEI's substantive argument is that the incontestability clause in the insurance policy prevents LBL from challenging the policy's validity on the ground that the policy lacks an

insurable interest.  Pl.'s Summ. J. Mot. at 16-18.  The policy's incontestability clause reads:

> *We [LBL] will not contest this certificate* after it has been inforce
> *during the lifetime of the insured for two years* from the issue date
> unless one of the following exceptions occurs:
>
> 1)  Any increase in face amount: This contestable period with
> respect to the increase amount will be measured during the lifetime
> of the insured for two years form the effective date of the increase.
>
> 2)  Reinstatement of this certificate or any riders: This contestable
> period will be measured during the life-time of the insured for two
> years following the reinstatement date.
>
> 3)  An attached rider has a separate incontestability provision.
> This contestable period will be measured in accordance with the
> incontestability provision provided in the rider.
>
> We may contest this certificate at any time for the failure to make
> sufficient payments to cover the monthly deductions required to
> keep this certificate and its riders in force.

Decl. of Eric A. Biderman in Supp. of Pl.'s Renewed Mot. for Summ. J. at Ex. 3, 14-CV-6449,
June 9, 2016, ECF No. 55-6, at p. 15 (emphasis added).  None of the above exceptions apply.

AEI contends that the court should disregard the choice of law provision in the insurance
contract (which points to New Jersey law) and apply New York law to the dispute.  Under New
York law, so long as there was an insurable interest when the policy was created – and even
though fraud permeated its creation – the New York two-year incontestability rule governs.  The
fact that it was assigned to a party without an insurable interest does not invalidate it.  Pl.'s
Summ. J. Mot. at 16-18.

### B.  LBL

LBL argues that the New Jersey choice of law clause in the insurance contract should be
enforced because a reasonable relationship between the parties and the transaction to New Jersey
existed.  Def. Lincoln Benefit Life Co.'s Response in Opp'n to Pl.'s Renewed Mot. for Summ. J.,
14-CV-6449, June 27, 2016, ECF No. 60 ("Def.'s Opp'n Mem."), at 11-13.

4

Should the court disregard the choice of law clause in the insurance contract on the ground of fraud (as it does), LBL asserts that under the "center of gravity" test used in New York, New Jersey has the most significant contacts with the policy and its law should apply. *Id.* at 13-17. Its main arguments rest on the facts that the signature block of the policy application indicates that it was signed in Lakewood, New Jersey, that the application was printed on "New Jersey forms," and that notices and verifications of coverage indicated they were for policies under New Jersey law. Def.'s Pre-Hr'g Br. for the Sept. 23, 2016 Evidentiary Hr'g on Choice of Law, 14-CV-6449, Sept. 16, 2016, ECF No. 84 ("Def.'s Pre-Hr'g Br."), 2-8.

LBL contends that the insurance policy is void *ab initio* under both New Jersey and New York law. Def.'s Opp'n Mem. at 17-33. Under New Jersey law, LBL contends that the policy is an illegal wagering contract, barred by the state's constitution, and that it lacked an insurable interest at inception. With respect to New York law, LBL invokes an exception to the contestability period for situations where the insured was fraudulently represented by an imposter, and where an insurable interest was lacking at inception. *Id.*

### C.  September 23 and September 26, 2016 Evidentiary Hearing

Following the August 3, 2016 evidentiary hearing, the court determined that an additional hearing and briefing was necessary to ascertain: (1) fraud, (2) the center of gravity, and (3) particularly, where the insurance application was signed. *See* Order, 14-CV-6449, Aug. 8, 2016, ECF No. 74 ("Aug. 8 Order"). The court is satisfied that no further relevant evidence on contestability is available.

### D.  November 22, 2016 Hearing

On November 22, 2016, the court orally summarized the evidence and heard arguments concerning AEI's motion for summary judgment. *See* Lincoln Benefit Life Company's Post-Hr'g Br. In Opp'n to Pl.'s Mot. for Summ. J., 14-CV-6449, Oct. 20, 2016, ECF No. 94 ("Def.'s

Post-Hr'g Br."); Pl.'s Post-Hr'g Br. In Supp. of its Renewed Mot. for Summ. J., 14-CV-6449,

Nov. 3, 2016, ECF No. 97 ("Pl.'s Post-Hr'g Br."); Amicus Curiae – Post-Hr'g Br. of Innovative

Brokers – Defendant in Civil Action 1:16-CV-02049-JBW-JO, 14-CV-6449, Nov. 3, 2016, ECF

No. 95.

LBL submitted a letter with supplemental authority for its contention that, if the court

were to deem the policy void, it would have the authority through its equitable powers to make

plaintiff whole through a return of premiums paid. *See* Letter from Jason Gosselin, 14-CV-6449,

Nov. 28, 2016, ECF No. 103, at 1. The court considered authority provided by LBL. *See, e.g.*,

*Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, No. 14-CV-5789 (D.N.J. Sept. 30,

2016). It determines that in the instant case it would be impossible to disentangle equities and

avoid LBL's laches, given that the policy was issued years ago with premiums being paid and

accepted since then.

## IV. Law

### A. Summary Judgment

Summary judgment is appropriate when the movant shows that there is "no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). "When ruling on a summary judgment motion, the district court must construe

the facts in the light most favorable to the non-moving party, resolving all ambiguities and

drawing all reasonable inferences against the movant." *Hernandez v. Int'l Shoppes, LLC*, 100 F.

Supp. 3d 232, 247 (E.D.N.Y. 2015), *appeal dismissed* (June 18, 2015). The substantive law

governing the case will identify those facts that are material, and "[o]nly disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

No genuinely triable factual issue exists "if, on the basis of all the pleadings, affidavits

and other papers on file, and after drawing all inferences and resolving all ambiguities in favor of the non-movant, it appears that the evidence supporting the non-movant's case is so scant that a rational jury could not find in its favor." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 86 (2d Cir. 1996). If the movant meets this burden, the non-moving party must provide "specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (internal quotation marks and citation omitted).

## B. Choice of Law

In a diversity action, a federal court applies the conflict of law rules of the state in which it sits. *OneWest Bank, FSB v. Joam LLC*, No. 10-CV-1063, 2012 WL 195013, at *5 (E.D.N.Y. Jan. 23, 2012); *Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135, 147 (2d Cir. 2008); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Under New York conflict of law, a choice of law provision in the parties' contract is "entitled to a presumption of enforceability." *Dukes Bridge LLC v. Sec. Life of Denver Ins. Co.*, No. 10-CV-5491, 2015 WL 3755945, at *4 (E.D.N.Y. June 16, 2015) (quoting *Aguas Lenders Grp. v. Suez, S.A.*, 585 F.3d 696, 800 (2d Cir. 2009)); *see also Granite Ridge Energy, LLC v. Allianz Global Risk U.S. Ins. Co.*, 979 F. Supp. 2d 385, 391 (S.D.N.Y. 2013) ("New York law provides that, '[a]s a general matter, the parties' manifested intentions to have an agreement governed by the law of a particular jurisdiction are honored.'" (quoting *Freedman v. Chem. Constr. Corp.*, 372 N.E.2d 12, 15 (N.Y. 1977))).

This presumption is rebutted when it is shown that the provision or the contract as a whole was procured through fraud, violates public policy, or the selected forum has insufficient contacts with the dispute. *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines (UK) Ltd.*, 230 F.3d 549, 556 (2d Cir. 2000); *Opulen Ventures, Inc. v. Axcessa, LLC*, No. 12-CV-01776, 2013 WL 829230, at *1 (E.D.N.Y. Jan. 22, 2013) (citing *Fieger v. Pitney Bowes Credit Corp.*,

251 F.3d 386, 393 (2d Cir. 2001)), *report and recommendation adopted*, No. 12-CV-1776, 2013

WL 828922 (E.D.N.Y. Mar. 6, 2013); *Benefitvision Inc. v. Gentiva Health Servs., Inc.*, No. 09-

CV-0473, 2011 WL 888280, at *5 (E.D.N.Y. Mar. 14, 2011) ("New York law is clear that absent

fraud or violation of public policy, contractual selection of governing law is generally

determinative so long as the State selected has sufficient contacts with the transaction." (internal

quotation marks and citation omitted)).

 If the contractual choice of law clause is disregarded (as it must be here because of fraud

in the inducement), New York compels the court to "determine whether there is an actual

conflict between the laws of the jurisdictions involved." *2004 Stuart Moldaw Trust v. XE*

*L.I.F.E., LLC*, 374 F. App'x 78, 80 (2d Cir. 2010). When a conflict does exist in a case

involving a contract, including one involving a life insurance policy, "New York courts apply a

'grouping of contacts' analysis . . . to determine which to apply." *Id.* at 81. This process is

known as a "center of gravity" analysis. *Matter of Allstate Ins. Co. (Stolarz – New Jersey Mfrs.*

*Ins. Co.)*, 613 N.E.2d 936, 939 (1993). "This approach requires application of the law of the

jurisdiction with the most significant interest in, or relationship to, the dispute." *Bank of New*

*York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014). "Under this approach, courts may

consider a spectrum of significant contacts, including the place of contracting, the places of

negotiation and performance, the location of the subject matter, and the domicile or place of

business of the contracting parties." *Brink's Ltd. v. S. African Airways*, 93 F.3d 1022, 1030-31

(2d Cir. 1996); *see also* Restatement (Second) of Conflict of Laws § 188 (1971).

### C. Findings of Fact Based on Evidentiary Hearing

 Determining whether a choice of law clause is enforceable – or, if a conflict of laws

exists, where is the center of gravity in the dispute – requires factual findings to be made by the

court, applying a preponderance of the evidence standard. *See Toll v. Tannenbaum*, 982 F. Supp.

2d 541, 551-52 (E.D. Pa. 2013) (adopting the holdings of the Fifth and Seventh Circuits that it is for the court to make factual findings necessary to a choice of law determination using a preponderance of the evidence standard), *aff'd*, 596 F. App'x 108 (3d Cir. 2014); *Coltec Indus. Inc. v. Zurich Ins. Co.*, No. 99-CV-1087, 2004 WL 413304, at *4 (N.D. Ill. Jan. 30, 2004) ("The court, not the jury, is responsible for making any factual determinations necessary to resolve the choice-of-law issue based on a preponderance of the evidence standard." (citing *Chance v. E.I. du Pont De Nemours & Co.,* 57 F.R.D. 165, 171 (E.D.N.Y. 1972))); *Nunez v. Hunter Fan Co.*, 920 F. Supp. 716, 717-18 (S.D. Tex. 1996) ("Because choice-of-law is the dispositive issue, the summary judgment standard with regard to disputed facts does not apply. Instead, the facts on which choice-of-law depends are properly determined by the [district] Court after considering the affidavits, depositions, and other matters submitted by the parties." (footnote omitted)).

### D. Incontestability Clauses

#### 1. New York Law

New York law requires all life insurance policies to contain a two-year incontestability clause providing

> [T]hat the policy shall be *incontestable after being in force during the life of the insured for a period of two years from its date of issue*, and that, if a policy provides that the death benefit provided by the policy may be increased, or other policy provisions changed, upon the application of the policyholder and the production of evidence of insurability, the policy with respect to each such increase or change shall be incontestable after two years from the effective date of such increase or change, except in each case for nonpayment of premiums or violation of policy conditions relating to service in the armed forces.

N.Y. INS. LAW § 3203(a)(3) (McKinney 2013) (emphasis added).

"An incontestability clause renders void any defense that the life insurance policy was invalid at its inception." *Ganelina v. Pub. Adm'r, New York Cty.*, 963 N.Y.S.2d 545, 548 (N.Y.

Sup. Ct. 2013) (citing *Berkshire Life Ins. Co. v. Weinig,* 47 N.E.2d 418 (1943)).  If the policy

does not contain an enforceable incontestability clause, New York law, this court holds, will

imply one.  "The statute does *not provide for exceptions* for claims of fraud or lack of an

insurable interest." *Principal Life Ins. Co. v. Erno Altman Ins. Trust*, No. 10-CV-1936, 2011

WL 7498936, at *3 (E.D.N.Y. Sept. 20, 2011) (emphasis added), *report and recommendation*

*adopted*, No. 10-CV-1936, 2012 WL 869303 (E.D.N.Y. Mar. 13, 2012).  "[F]raudulent

misrepresentations, fraud in the procurement, and *fraud in the making of the contract have been*

*held barred as defenses after the expiration of the period of contestability*." 69 N.Y. JUR. 2D INS.

§ 1470 (emphasis added).  *See also Halberstam v. United Stated Life Ins. Co. in City of N.Y.*, 945

N.Y.S.2d 513, 517 (N.Y. Sup. Ct. 2012) ("The legislature specifically permitted insurers to

include exceptions to the incontestability clause for fraud in disability and health insurance

policies, (New York Insurance Law section 3216), but did not provide for such an exception for

life insurance policies. (New York Insurance law section 3203(a)(3).").

That a policy governed by New York substantive law cannot be voided for fraud or lack

of insurable interest once the two-year contestability period has expired is grounded in statute

and public policy.  "A failure to enforce the incontestability rule now would result in a forfeiture

to [the policy owner] . . . and an unnecessary advantage to [the insurer] by enabling it to avoid a

claim it previously accepted." *New England Mut. Life Ins. Co. v. Caruso*, 535 N.E.2d 270, 274-

75 (N.Y. 1989).  The New York Court of Appeals explained that "[t]his inequity may be

avoided, and the public purpose underlying the insurable interest requirement implemented, by a

rule which encourages the insurer to investigate the insurable interest of its policyholders

promptly within the two-year period.  Such investigations would not only eliminate 'wagering'

contracts but would do so promptly." *Id.* at 275 (barring an insurer from challenging a life

insurance policy after the two-year contestability period had passed).

In New York, allegations of forgeries on application forms can survive an incontestability clause because the benefits of an incontestability clause inure to the contractually insured and his or her beneficiaries, not to a stranger to the contract. *Am. Mayflower Life Ins. Co. of New York v. Moskowitz*, 794 N.Y.S.2d 32, 35-36 (N.Y. App. Div. 2005). An entity or person deriving an interest in a policy from the trust instrument is not a stranger to the contract, even if there is an allegation of forgery on the insured's application. *Berkshire Settlements, Inc. v. Ashkenazi*, No. 09-CV-0006, 2011 WL 5974633, at *4 (E.D.N.Y. Nov. 29, 2011) ("Plaintiffs derive their interest from *the Trust,* which was the undisputed purchaser, owner and beneficiary of the policy. As such, it is not a complete stranger to the policy, even if [the insured] did not consent to its purchase. *Moskowitz,* therefore, is not apposite." (emphasis in original)).

Under New York law it is permissible to transfer a life insurance policy to a person without an insurable interest. *Kramer v. Phoenix Life Ins. Co.*, 940 N.E.2d 535, 536-37 (N.Y. 2010) ("New York law permits a person to procure an insurance policy on his or her own life and immediately transfer it to one without an insurable interest in that life, even where the policy was obtained for just such a purpose.").

### 2. New Jersey Law

New Jersey law also requires that all life insurance policies include a two-year incontestability clause:

> [A] provision that the policy (exclusive of provisions of the policy or any contract supplemental thereto relating to disability benefits or to additional benefits in event of death by accident or accidental means or in event of dismemberment or loss of sight) shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue.

N.J. Stat. Ann. § 17B:25-4 (West 1972). "Statutorily mandated incontestability clauses are

generally construed as statute of limitations that, upon expiration, preclude all coverage defenses, including fraud." *Mitchell v. Banner Life Ins. Co.*, No. 08-CV-5984, 2011 WL 5878378, at *4 (D.N.J. Nov. 22, 2011) (internal quotation marks and citations omitted).

*But* unlike New York law, notwithstanding an incontestability clause in the insurance contract, under New Jersey law "*an insurer may deny a claim* if the insured committed *fraud in the policy application*." *Ledley v. William Penn Life Ins. Co.*, 651 A.2d 92, 95 (N.J. 1995) (emphasis added); *Lincoln Nat. Life Ins. Co. v. Calhoun*, 596 F. Supp. 2d 882, 887 (D.N.J. 2009) ("A life insurance policy may be rescinded or voided where an applicant makes a misrepresentation on a policy application that is material."). "Insureds begin to run afoul of the insurable interest requirement . . . when they intend at the time of the policy's issuance, to profit by transferring the policy to a stranger with no insurable interest at the expiration of the contestability period." *Calhoun*, 596 F. Supp. 2d at 889. This is a critical difference between New York and New Jersey law.

## V.    Application of Law to Facts

### A.  Choice of Law

Under the law of conflicts, the insurance policy's choice of law provision should be enforced unless there is a showing of fraud, the clause violates public policy, or the selected forum does not have sufficient contacts with the dispute. *Hartford Fire Ins. Co.*, 230 F.3d at 556. Enforceability of a choice of law provision is a matter of law for the court to resolve. *See Chance*, 57 F.R.D. at 168-70.

### 1.  Findings of Fact Based on Evidentiary Hearing

#### a.  Fraud

For the purposes of resolving the conflict of law analysis, the court finds by a preponderance of the evidence – based on the parties' pre-hearing briefs, post-hearing briefs, and

the testimony in depositions and elicited at the evidentiary hearing on September 23 and September 26, 2016 – that the insurance policy on Ms. Fischer's life, now owned by AEI, was fraudulently obtained.  The place of execution was misstated as were the assets of the insured.

Ms. Fischer stated during her testimony that she was unaware that there was an insurance policy of more than $6 million on her life.  Hr'g Tr., 14-CV-6449, Sept. 23, 2016, ECF No. 88 ("Sept. 23 Hr'g Tr."), at 36:22-37:8.  She said that she did not recall signing the policy or meeting with Mr. Jacob, the insurance agent.  *Id.* at 35:2-4.  She admitted that she did not have sufficient funds to pay the minimum initial payments or the planned annual payments to keep the policy in force.  *Id.* at 37:3-39:8; Def.'s Ex. 1, 14-CV-6449, Sept. 21, 2016, ECF No. 87-1. When reviewing the policy, Ms. Fischer stated that she "never saw this document" and when asked to look at the signature of the primary proposed insured to determine if she actually signed that document, she stated, "I did not."  Sept. 23 Hr'g Tr. at 44:24-45:6.  She further testified that she neither had an earned annual income of $1.5 million nor an estimated net worth of $87 million, as certified in the financial statement appended to the policy.  *Id.* at 41:18-44:14; Def.'s Ex. 2, 14-CV-6449, Sept. 21, 2016, ECF No. 87-2.

Ms. Fischer's son, Mr. Fischer, testified that he had arranged for the life insurance policy with his mother and Mr. Jacob, the insurance agent.  Sept. 23 Hr'g Tr. at 54:3-55:7.  He recalled signing documents in connection with the insurance contract, but did not remember signing the policy application specifically.  *Id.* at 57:14-59:12, 140:20-141:2.  He was unable to recall details about speaking with his mother with respect to the insurance policy, but was "sure [he] did discuss with her that she should . . . meet with Mr. Jacob to buy insurance."  *Id.* at 79:25-81:11. He did not recall being present when, or if, Ms. Fischer signed the policy application.  *Id.* at 81:12-14.

Regarding the financing of the policy, Mr. Fischer testified that Mr. Jacob helped him arrange and set up the Trust instrument, but that he never read the documents Mr. Jacob asked him to sign. *Id.* at 70:6-25, 73:11-18. Mr. Fischer did not know who paid the premiums on his mother's insurance. *Id.* at 83:23-84:10. When reviewing a check issued by the Trust and a bank statement associated with the Trust, Mr. Fischer neither recalled writing any checks from the trust to pay premiums nor granting anyone else authority to do so. But he admitted that it was possible that he gave Mr. Jacob the checkbook and signed checks that Mr. Jacob issued. When asked why one million dollars was wired into the Trust account and where that money originated, he stated that he "couldn't care less" that money was wired into and out of the account to pay for the premiums, since "[i]t wasn't [his] money." *Id.* at 90:7-98:6; Def.'s Ex. 6, 14-CV-6449, Sept. 21, 2016, ECF No. 87-6; Def.'s Ex. 7, 14-CV-6449, Sept. 21, 2016, ECF No. 87-7. Finally, Mr. Fischer admitted that he received $50,000 from Mr. Jacob for acting as a middleman in the sale of the life insurance policy, and that he did not share this payment with his mother. Sept. 23 Hr'g Tr. at 109:18-111:6, 114:8-114:12.

Mr. Jacob, the insurance agent, testified that he sold Ms. Fischer three large life insurance policies. He indicated that he did not know whether she needed these policies, but that it was his job to sell as much insurance as possible. *Id.* at 212:19-213:18. Like Mr. Fischer, he did not know who wired one million dollars into the Trust bank account to cover policy premiums. *Id.* at 215:8-14. He admitted to receiving a commission of roughly $100,000 and giving $50,000 of this commission to Mr. Fischer despite knowing that he was not permitted to share the commission with a client. *Id.* at 226:15-228:19, 261:2-16. He also admitted that he reached out to a contact who sells insurance policies in the secondary market before Ms. Fischer's policy was issued, and that it was his general practice to do so when he knew that clients would be unable to

cover the premiums themselves.  *Id.* at 252:13-254:12.

All three witnesses – mother, son, and broker – lied.  For whatever reason, they would not admit that they remembered any details of the issuance of this policy (a large one for people in their economic position); they were afraid to admit their knowledge because they feared they might have to pay a penalty or, in the case of the son and the agent, disgorge a large profit.  The witnesses' testimony and lies support a finding that the policy was fraudulently obtained.

Ms. Fischer and Mr. Fischer's testimony was evasive and was not veracious.  Both denied having known the value of the policy or having provided false financial information to apply for the policy.  It is obvious that the financial statement accompanying Ms. Fischer's application was false and vastly overstated her net worth.  *Id.* at 44:6.  It has been established that Mr. Fischer received a sizeable payment for introducing his mother to the insurance agent, even though the agent – who received a large commission for the sale – was not permitted to share his commission.  That none of the witnesses said they knew where the one million dollars wired into the Trust originated and who paid the premiums on the policy supports a finding that the policy was issued fraudulently.

Because of the extensive fraud in the inducement, the choice of law clause contained in the policy is not operative.  *Benefitvision Inc.*, 2011 WL 888280, at *5.

### b.  Center of Gravity

New York choice of law rules apply.  *Forest Park Pictures v. Universal Television Network, Inc.*, 683 F.3d 424, 433 (2d Cir. 2012).  A conflict in law exists; the law on exceptions to incontestability clauses in life insurance contracts is different in New York and New Jersey.  *Compare Ganelina*, 963 N.Y.S.2d 545 at 548 (under New York law, "[a]n incontestability clause *renders void any defense* that the life insurance policy was invalid at its inception" (emphasis added)), *and Principal Life Ins. Co.*, 2011 WL 7498936, at *3 ("*The [New York] statute does not*

*provide for exceptions for claims of fraud or lack of an insurable interest.*" (emphasis added)),

*with Ledley*, 651 A.2d at 95 (under New Jersey law, "*an insurer may deny a claim if the insured committed fraud in the policy application*" (emphasis added)), *and Lincoln Nat. Life Ins. Co.*, 596 F. Supp. 2d at 887 (under New Jersey law, "[a] life insurance *policy may be* rescinded or *voided* where an applicant makes a misrepresentation on a policy application that is material" (emphasis added)). *See also* Aug. 8 Order.

A court applying New York conflicts law will, as already noted, apply the "center of gravity" test to determine which state has the most significant interest in the dispute. *Matter of Allstate Ins. Co. (Stolarz – New Jersey Mfrs. Ins. Co.)*, 613 N.E.2d at 939; *Bank of New York v. Yugoimport*, 745 F.3d 599, 609 (2d Cir. 2014).

Ms. Fischer testified that she lives in Brooklyn, has lived there for about 60 years, and never traveled to Lakewood, New Jersey. Sept. 23 Hr'g Tr. at 27:11-28:13, 30:18-32:16. This testimony is consistent with her lifestyle and is true.

Mr. Fischer testified that he lives in Monsey, New York, and has lived there for about 30 years. *Id.* at 52:2-5. He acted as a middleman between his mother and Mr. Jacob, and met with Mr. Jacob at his home in New York on several occasions in order to discuss the sale of an insurance policy on his mother's life. *Id.* at 54:3-55:7. He did not sign any documents in Lakewood, New Jersey, and did not recall ever meeting Mr. Jacob there. *Id.* at 60:1-61:5, 138:8-12. The Trust, which paid premiums on the policy, was formed by Mr. Fischer in New York. *Id.* at 70:6-71:17. He testified that all documents he signed relating to the policy were signed in New York. *Id.* at 143:18-144:7. This testimony is true.

Joseph Bergman, an employee of Innovative Brokers, testified that his company is a New York-based general insurance agency that assisted Mr. Jacob in placing Ms. Fischer's life

insurance policy with LBL. *Id.* at 155:10-19. The general agency submitted Ms. Fischer's policy documents to LBL from its office in Brooklyn, New York. *Id.* at 195:11-196:8. This testimony is true.

Mr. Jacob confirmed that when he sold Ms. Fischer the life insurance policy, he met with her in Brooklyn. *Id.* at 207:18-24. He did not deliver the policy to Ms. Fischer in New Jersey, and he himself signed the policy application in New York. *Id.* at 220:2-16, 243:2-7; Pl.'s Ex. 1, 14-CV-6449, Sept. 16, 2016, ECF No. 83-1. LBL stipulated during the evidentiary hearing that Mr. Jacob conducted all activities relating to the policy in New York. Mr. Jacob confirmed these facts. Sept. 23 Hr'g Tr. at 269:17-270:19. This testimony and stipulation is true.

The policy was negotiated, contracted, signed, and issued in New York to individuals residing in New York. *Brink's Ltd.*, 93 F.3d at 1030-31. The broker and general agency who sold the policy were located in New York, and the Trust was executed and operative in New York. Transfers of the Trust's funds were made through a New York bank account. Neither the insured nor her son traveled to New Jersey to sign the application; plaintiff produced no believable evidence to prove that the policy was signed outside of New York. References to New Jersey law in subsequently issued documents and a reference to Lakewood, New Jersey in the policy application's signature block – which none of the witnesses recall filling in – are false and will not support a finding that the center of gravity is in New Jersey. Sept. 23 Hr'g Tr., 323:11-20, 329:20-330:5.

### 2. Conclusion on Choice of Law

Because the choice of law provision in the insurance contract is invalid (based on fraud), and the center of gravity is in New York, the law of New York is operative on the substantive issues in dispute.

## B. Incontestability Clause

Under New York law, allegations of fraud in the procurement of the policy do not enable an insurer to circumvent the two-year incontestability rule. *Ganelina*, 963 N.Y.S.2d at 548; *Principal Life Ins. Co.*, 2011 WL 7498936, at *3. Though LBL proved that the policy was fraudulently obtained, the expiration of the two-year incontestability clause of the policy bars any challenge now.

Not even LBL's allegations of forgery in the application forms are sufficient to circumvent the incontestability. As in *Berkshire Settlements*, plaintiff AEI derives its interest in the policy from the Trust set up by Mr. Fischer, not the insured herself. AEI is not a "complete stranger" to the policy; allegations of forgery do not void the incontestability clause. *Berkshire Settlements, Inc.*, 2011 WL 5974633, at *4 (distinguishing *Moskowitz*, 794 N.Y.S.2d at 35-36).

LBL argues that public policy considerations should bar enforcement of the life insurance contract. Def.'s Post-Hr'g Br. at 14-18. The case on which it relies to support that argument barred the insurer from asserting invalidity of the policy when the statutory two-year contestability period expired before the insured died. *Caruso*, 535 N.E.2d at 271. The *Caruso* court noted that "balancing of the policy considerations" should be taken into consideration when determining the enforceability of a life insurance policy, but it concluded that it did not find "anything in the public policy of this State which militates against enforcement of the incontestability clause in these circumstances." *Id.* at 273-74.

Another case on which LBL relies, *New England Mut. Life Ins. Co. v. Doe*, is also inapposite. An insurer was barred from disclaiming coverage for a claim made more than two years after issuance of *a disability policy* where the insurer had purposely chosen not to include a fraud exception in the policy's incontestability clause. *New England Mut. Life Ins. Co. v. Doe*, 710 N.E.2d 1060, 1063-64 (N.Y. 1999). The court acknowledged that "a far more difficult case

would be presented" had the policy at issue been one for life insurance, because New York law permits disability insurers, but not life insurers, to include a fraud exception in a policy's incontestability clause. *Id.* at 1064.

Neither *Caruso* nor *Doe* is applicable in the instant matter. Dicta suggesting that public policy *could* bar enforcement or that a court considering disability insurance *might* rule differently if life insurance were at issue, are inapplicable. Insurance law is heavily controlled by the state. If there were any area in which a federal court would be reluctant to challenge existing state substantive law or policy, it would be in the area of insurance. *See* Hr'g Tr., Nov. 22, 2016.

The court need not reach LBL's argument that the life insurance policy cannot be enforced because Ms. Fischer failed to consent to obtaining it. *See* Def.'s Post-Hr'g Br. at 3-11. Under New York law, questions about an insured's consent to an application for, or issuance of, a life insurance policy are subject to the incontestability clause and cannot be challenged following the two-year contestability period. *Berkshire Settlements, Inc.*, 2011 WL 5974633 at *5 (relying on *Caruso* to conclude that "[t]he Court can think of no reason why the insured consent provision would receive a different treatment" than the insured interest provision, and holding that the incontestability clause prevented challenge to the policy); *Halberstam*, 945 N.Y.S.2d at 517 (relying on *Berkshire Settlements, Inc.* to conclude that the expiration of a life insurance policy's two-year contestability period prevented insurer from challenging its enforceability on the basis that insured lacked consent).

LBL's argument that the policy is void because the Trust was improperly constituted fails. *See* Def.'s Post-Hr'g Br. at 11-14. LBL has not advanced any substantial evidence in support of this argument. LBL did not offer any evidence that the witnesses to the documents

that formed the Trust acted fraudulently.  *See* Sept. 23 Hr'g Tr.  The facts surrounding creation

of the policy remain shrouded in mystery.  LBL concedes in its brief that the fact that the Trust

documents were notarized creates a presumption that the signatures are authentic.  Def.'s Post-

Hr'g Br. at 13 n.9.  That presumption may only be rebutted by clear and convincing evidence,

which has not been provided.  *Orix Fin. Servs., Inc. v. Thunder Ridge Energy, Inc.,* No. 01-CV-

4788, 2008 WL 953994, at *5 (S.D.N.Y. Apr. 8, 2008); *Orix Fin. Servs., Inc. v. Roth,* No. 06-

CV-2069, 2006 WL 587483, at *18 (S.D.N.Y. Mar. 8, 2016); *Chianese v. Meier*, 729 N.Y.S.2d

460, 466 (N.Y. App. Div. 2001), *aff'd as modified and remanded*, 774 N.E.2d 722 (N.Y. 2002);

*Spilky v. Bernard H. La Lone Jr., P.C.*, 641 N.Y.S.2d 916, 917-18 (N.Y. App. Div. 1996).

## VI.    Equity and Laches

LBL waited more than two years from the inception of the life insurance policy to contest

its validity.  AEI was a bona fide purchaser for value of the life insurance policy; it relied upon

LBL's failure to challenge the policy earlier – when witnesses might have been able to explain

its genesis.  New York's incontestability rule renders the policy enforceable.

The equities favor enforcement of the policy (Policy No. 01N1404934) in this case.  The

fact that plaintiff has been making premium payments in good faith for approximately five years

supports a decision that New York law rendered the policy incontestable after two years.

Defendant, the issuer, was taking full economic benefit of the policy and could have made an

earlier investigation into its validity.  *Laches* as well as equity favors AEI.

## VII.    Conclusion

The motion of plaintiff for summary judgment in the instant action, *AEI Life, LLC v.

Lincoln Benefit Life Co.*, No. 14-CV-6449, is granted.  Policy No. 01N1404934 is enforceable.

No costs or disbursements are granted.  The case was brought in the interest of improving

ethics and open dealing in the insurance industry.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   December 22, 2016
        Brooklyn, New York